John Mohn v. Commissioner.
Mohn v. Commissioner
Docket No. 25261.
United States Tax Court
1951 Tax Ct. Memo LEXIS 188; 10 T.C.M. (CCH) 582; T.C.M. (RIA) 51183; June 19, 1951
*188 Solly Robins, Esq., for the petitioner. Thos. A. Steele, Jr., Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1947 in the amount of $198. The sole question presented is whether the Commissioner erred in his determination that petitioner realized taxable income from tips in the amount of $578 in 1947. Petitioner has not challenged the Commissioner's disallowance of petitioner's claimed exemption for dependency credit on account of his mother. Findings of Fact Petitioner resides in St. Paul, Minnesota, and filed his return for the calendar year 1947 with the collector of internal revenue for the district of Minnesota. During all of 1947 petitioner was employed by Brown and White Cab Co. as a taxicab driver in St. Paul. Driving a taxicab has been his occupation continuously since that time. Petitioner kept no record of tips received by him during 1947, and in his income tax return for that year did not report tips in any amount received by him. During 1947 petitioner reported total bookings from cab fares to the Brown and White *189 Cab Co., his employer, in the amount of $5,780. Of this amount petitioner was allowed to retain $2,602.65 as his percentage of the gross bookings, which last amount petitioner reported on his 1947 income tax return. Petitioner operated his cab 10 hours a day, usually 6 days a week. He alternated between day and night runs, both day and night runs being of 10 hours duration. He had two weeks vacation in 1947 and received $80 vacation pay, but no tips during that time. His daily bookings were from $15 to $20. He was guaranteed $40 a week by the company, if he worked 6 days a week, and in 35 or more weeks he earned the minimum amount required. In 1947, the City of St. Paul regulated cab fares and meters were used in determining taxi fares. The rates were 35 cents a "flag throw" and 5 cents for each quarter of a mile, the rate for the first quarter mile being 40 cents, first half mile, 45 cents, etc. The custom of tipping cab drivers prevailed in St. Paul in 1947. Passengers, in addition to taxi fares due, ordinarily tipped or paid the cab driver an additional sum of approximately 10 per cent or more. In fares of from 40 to 50 cents, a 10 cent tip was customarily paid, and a 15 to *190 25 cent tip on fares from 50 cents to a dollar. Tips were not paid on "school runs" or "contract runs". Respondent, as advised in his letter of deficiency, determined that petitioner in the calendar year 1947 received tips aggregating $578, which amount he included in petitioner's taxable income. Petitioner did, in 1947, in his occupation as a taxicab driver, receive tips aggregating the sum of $578. Opinion On the hearing, petitioner, in his effort to disprove the Commissioner's determination that in 1947 he received tips aggregating $578, being 10 per cent of petitioner's total bookings, offered no testimony except his own and that of another cab driver, while respondent offered six witnesses in substantiation of his determination. Petitioner's testimony was not convincing; having kept "no records whatsoever" of tips received in the taxable year, and in his tax return having reported no sum received for tips, he undertook, with the aid of counsel, to justify his failure to report tips received by him. Petitioner, while admitting that his total bookings or total receipts in 1947 were $5,780, claimed that the total amount of tips he received in that year was only $70 to *191 $80. He also testified that in 1947 he had to pay to the company, for fares which passengers failed to pay him, the sum of $70 to $80, so that the total tips received "just about balanced" the amount he had to pay the company for delinquent passengers. Considering the record as a whole, we cannot accept these figures, either as to tips received or sums paid by petitioner, as being correct, and petitioner's own testimony, and his manner of testifying, raises a doubt as to their accuracy. He offered no explanation as to why or how he estimated the tips to be only $70 to $80, which was less than 1 1/2 per cent of his total bookings and about 1/10 in amount of the tips ordinarily paid cab drivers in St. Paul. His witness Barisonzi did not corroborate him as to this small percentage in tips. Barisonzi testified that he kept no records, but he did not receive 10 per cent from tips and did not think that other taxi drivers did, but he did not claim that any taxi driver received tips as low in amount as 1 1/2 per cent of the fares paid. As to the $70 or $80 which petitioner claims he had to advance to the company for passengers who failed to pay their fares, his testimony upon this question *192 is not convincing. After petitioner testified that he kept no records and had no figures as to the amount of delinquent fares paid by him, and had twice stated that he was unable to "figure out" such amount, his counsel, for the third time, prodded him with the same question, and he finally said "possibly $70 to $80," and then, in answer to a direct question from his counsel, stated that the tips received just "about balanced" the delinquent fares paid by him. These coincidental figures as to tips received and amounts paid by petitioner appear to have been fantastic guesses by him, and they are both unsupported by any other testimony. That the custom of tipping cab drivers 10 per cent or more prevailed in St. Paul in 1947 is established by respondent's six witnesses. In fact, petitioner's own testimony tended to corroborate them when he testified that he sometimes patronized other cabs as a passenger, and on such occasions usually paid a 15 per cent tip. That some of respondent's witnesses were employed by the government we do not think affects their credibility as witnesses. Unlike petitioner, they had no pecuniary interest in the outcome, and one of them was especially well qualified *193 to testify on this subject, since his official work had required him to investigate the practice of tipping cab drivers in St. Paul. There is no evidence to support the statement in petitioner's brief that "he spent half, or more, of his time in the type of taxi-cab runs from which no tips of any kind were received." Petitioner testified that sometimes he had what was known as school runs or charity runs from which no tips were received, but he did not specify what portion of his time was devoted thereto. He further stated that he was engaged in "all types of runs, passengers, school runs", etc., and that he did not have school runs or charity runs every day, but only "when he just happened to catch them". Tips on cab fares of less than one dollar ranged from 15 to 25 per cent, and we think the excess over 10 per cent (rate used by Commissioner) in these fares would offset the school runs, charity runs and vacation period, on and during which tips were not paid. The petitioner has wholly failed to disprove the Commissioner's determination that petitioner received $578 in tips in 1947, while respondent has supported his determination by affirmative proof. Decision will be entered *194 for the respondent.